IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

———————

**UNITED STATES OF AMERICA,**

      Plaintiff,

v.                                                                                                     No. CR 05-1647 BB

**JUAN PEDRO PAYAN-VARGAS,**

      Defendant.

**COURT'S FINDINGS OF FACT
AND CONCLUSIONS OF LAW
AND
ORDER DENYING SUPPRESSION**

THIS MATTER came before the Court for an evidentiary hearing on October 5, 2005, on Defendant's *Motion to Suppress Evidence* [Doc. 17], and having reviewed the briefs of counsel, having adduced evidence, and having heard the oral arguments of counsel, the following are the Court's findings of fact and conclusions of law:

**Findings of Fact**

1. Detective Jaime Quezada works for the U.S. Marshal's Fugitive Task Force and the Targeting Neighborhood Threats Unit for the Las Cruces Police Department. His primary assignment is to enforce New Mexico state warrants.

2. Detective Quezada received a "contact sheet" from the New Mexico Adult Probation and Parole Office for a fugitive named Fidel Gonzalez.

3. The contact sheet received by Detective Quezada contained identification information about Mr. Gonzalez. Such information included Mr. Gonzalez' physique, photographs, and current address.

4. As part of Detective Quezada's work, he was to enforce an arrest warrant issued by the state district court on Fidel Gonzalez.

5. On April 19, 2005, Detective Quezada, assisted by four other officers, went to Fidel Gonzalez' house to execute the warrant. However, only Gloria Gonzalez, Mr. Gonzalez' mother, was present.

6. Mrs. Gonzalez consented to the search of her house.

7. Detective Quezada and the other officers were unable to find Fidel Gonzalez and proceeded to leave the premises.

8. After leaving the premises, Detective Quezada decided to continue surveillance on the Gonzalez residence.

9. Shortly thereafter, a Hispanic man appeared from behind the Gonzalez home. It looked to Detective Quezada as though the man had been hiding behind the home while the officers were searching it. The man was wearing a white T-shirt.

10. Although the man in the T-shirt was somewhat shorter and smaller than the warrant description of Fidel Gonzalez, Detective Quezada has found contact sheet descriptions to vary when describing the same subject, and he could initially see only the profile of the man in the T-shirt. (Defendant is approximately 5'5" and

**150 pounds while Fidel Gonzalez is approximately 5'9" and 200 pounds.) The man in the T-shirt was Defendant, Juan Pedro Payan-Vargas, who is the brother-in-law of Fidel Gonzalez.**

11. **Mr. Gonzalez' residence and Defendant's residence are located on the same lot. Both houses are connected by a walkway that is lit by at least two floodlights.**

12. **At the time Detective Quezada saw Defendant walking behind the Gonzalez house, he called for backup. During his call, Detective Quezada saw a Cadillac arrive at the Gonzalez house and knew the father of Fidel Gonzalez drove a Cadillac. A man got out of the vehicle and was talking to Defendant.**

13. **Four to five officers arrived at the scene and approached Mr. Gonzalez and Defendant.**

14. **Suspicious he was Fidel Gonzalez, Detective Quezada asked Defendant his identity. Defendant gave Detective Quezada his name and date of birth. Detective Quezada called Central Dispatch and was advised that Defendant had an outstanding warrant as an illegal alien who had been deported following an aggravated felony. Defendant then admitted he was not legally entitled to be in the United States. Detective Quezada therefore called the United States Border Patrol.**

15. He was informed a Border Patrol unit would take from 20 to 40 minutes to arrive at the scene. Therefore Detective Quezada was told by his supervisor to take Defendant to the Border Patrol station.

16. Defendant was taken to the Border Patrol station because of his violation of federal immigration law.

## Conclusions of Law

1. A brief seizure to investigate a reasonable suspicion of a crime is a "narrowly drawn" exception to the probable cause requirement of the Fourth Amendment. *Terry v. Ohio*, 392 U.S. 1, 26 (1968).

2. Detective Quezada had a reasonable suspicion the Defendant might be Fidel Gonzalez for whom he possessed an arrest warrant at the time he initially questioned Defendant about his identity.

3. To be lawful, a warrantless arrest must be supported by probable cause. *United States v. Vasquez-Pulido*, 155 F.3d 1213, 1216 (10th Cir. 1998). "Probable cause to arrest exists when an officer has learned of facts and circumstances through reasonably trustworthy information that would lead a reasonable person to believe that an offense has been or is being committed by the person arrested." *United States v. Guerrero-Hernandez*, 95 F.3d 983, 986 (10th Cir. 1996).

4.   Once Detective Quezada determined that Defendant's presence in the United States was a felony, he had probable cause to arrest Defendant. *Beck v. Ohio*, 379 U.S. 89, 91 (1964).

5.   Detective Quezada was authorized to arrest Defendant for the felony being committed in his presence even though Detective Quezada was not a federal immigration officer. *See State v. Arroyos*, 115 P.3d 232 (N.M. App. 2005); *Incorporated County of Los Alamos v. Johnson*, 776 P.2d 1252 (N.M. 1989).

6.   Detective Quezada's arrest of Defendant did not violate the Fourth Amendment and therefore his discovery of Defendant's identity is not subject to suppression. *State v. Dawson*, 983 P.2d 421 (N.M. App. 1999); *United States v. Williams*, 356 F.3d 1268 (10th Cir. 2004). Nor would suppression be an appropriate remedy for Detective Quezada turning Defendant over to the Border Patrol even if Detective Quezada lacked jurisdiction for the arrest. *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984).

## ORDER

For the above stated reasons, Defendant's *Motion to Suppress Evidence* is DENIED.

SO ORDERED this 24th day of October, 2005.

                                                      **BRUCE D. BLACK**
                                                      **United States District Judge**